UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

YSN IMPORTS, INC. and
ASHTEAD HOLDINGS INC.,

    Plaintiffs,

        -against-

FEIGE "PEGGY" OBERLANDER,
U SHIPPERS GROUP, INC., U SHIPPERS GROUP
MANAGEMENT CO., INC. and GREEN NORTH
AMERICA, INC.

    Defendants.

---

Index No. 20 cv 5981


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
ORDER TO SHOW CAUSE FOR A PRELIMINARY INJUNCTION AND
<u>TEMPRARY RESTRAINING ORDER</u>**

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................... 1
**THE FACTS** ................................................................................................................................. 2
**ARGUMENT** ................................................................................................................................ 2
**POINT 1 PLAINTIFFS HAVE MET THE STANDARD FOR THE ISSUANCE OF A PRELIMINARY INJUNCTIONAND TEMPORARY RESTRAINING ORDER** ..... 2
    **A. The Standard** ............................................................................................................ 2
    **B.**    **Plaintiffs Have An Overwhelming Likelihood of Success on the Merits.** ........ 4
        **i.**    **Defendants agreed that by Plaintiffs jointing the Association, Plaintiff would be able to ship its containers for an addition $55 fee per contianer.** ......................................................................................................... 4
        **ii.**   **Defendants are invoicing Plaintiffs exorbitant fees above the agreed fee of $55. Defendants are requiring that Plaintiffs pay additional fees per container contrary to the agreement.** ............................................. 5
    **C.**    **Plaintiffs Will Suffer Irreparable Harm if    Preliminary Injunctive Relief is Not Granted.** ................................................................................................................ 6
        **i.**    **The Association is a non-stock corporation and will be unable to satisfy any ultimate damages award** ....................................................... 8
**POINT 2 PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND** ................... 10
**CONCLUSION** ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

Cases

*Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) .............................................................. 3
*Alpha Capital Aktiengesellschaft v. Group Management Corp.*, 2002 WL 3I681798 at *11 (S.D.N.Y. Nov. 25, 2002) ........................................................................................................ 9
*Alvenus Shipping v. Delta Petroleum (U.S.A.) Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y. 1994) ......... 9
*Brenntag International Chemicals, Inc. v. Bank of India*, 175 F.3d 245, 250 (2d Cir. 1999) .......... 9
*Department of Urban Development v. K Capolino Construction Corp.*, 2001 U.S. Dist. LEXIS 5825. *10 (S.D.N.Y. May 7, 2001) ........................................................................................... 9
*Doctor's Associates v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) ........................................................ 11
*Fleet National Bank v. Trans World Airlines*, 767 F. Supp. 510, 519 (S.D.N.Y. 1991) ................. 11
*Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) ............................ 7
*International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) cert. denied, 94 S. Ct. 2644, 417 U.S. 932, 41 L. Ed. 2d 236 (1974) ............................................................... 11
*Jacobson & Co. v. Armstrong Cork Co.*, 548, F.2d 438, 441 (2d Cir. 1977) .................................. 3
*Kamine/Besicorp. Allegany L.P. v. Rochester Gas & Electric Corp.*, 908 F. Supp. 1180, 1193 (W.D.N.Y. 1995) ............................................................................................................... 11
*La Plaza Defense League v. Kemp*, 742 F. Supp. 792, 807, note 13 (S.D.N.Y. 1990) ................. 10
*Lawrence v. Zee*, No. 16-CV-1515, 2016 WL 1690669, at *1 (E.D.N.Y. Apr. 26, 2016) .............. 3
*North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999) .................................... 3
*Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77-78 (2d Cir. 1994) ...................................... 3
*Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986) ............................................ 9
*Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ...................... 3
*Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ..................................... 4
*SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d. Cir. 1990) ........................................................... 3
*Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 735 (S.D.N.Y. 1993) ................................................ 9
*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995) ....... 2, 3

Statutes
Fed. R. Civ. P. Rule 65 ....................................................................................................... 1, 2, 10
28 U.S.C. §2201 .........................................................................................................................1

## PRELIMINARY STATEMENT

This memorandum of law is submitted by Plaintiffs YSN Imports, Inc. ("YSN") and Ashtead Holdings Inc. ("Ashtead" and together with YSN each a "Plaintiff" and collectively the "Plaintiffs") in support of its motion, under Fed. R. Civ. P. Rule 65 and 28 U.S.C. §2201, for a preliminary injunction and temporary restraining order against Defendants Feige "Peggy" Oberlander ("Oberlander"), U Shippers Group, Inc., (the "Association"), U Shippers Group Management Co., Inc. ("Management"), and Green North America, Inc. ("Green" and together with Oberlander, the Association, and Green each a "Defendant" and collectively the "Defendants).

Plaintiffs seek a preliminary injunction, pending final determination of this action and a temporary restraining order, pending a determination of this motion:

i) enjoining Defendants from canceling Plaintiffs' membership with the Association; and

ii) enjoining Defendants from changing Plaintiffs current shipping allocations as member of the Association.

As is set forth in the accompanying Affirmations and Affidavits of Eliezer Drew ("Drew Aff."), Shmuel Newman ("Newman Aff."), and Shalom Coleman ("Coleman Aff."), Plaintiffs are members of the Association which entitles them to shipping allocations of goods through maritime transport. The Association and Oberlander have threatened to cancel Plaintiffs' membership in the association if Plaintiff do not pay additional fees per container in violation of the membership contract. Thus, Plaintiffs has an overwhelming likelihood of success on the merits of its claims.

Additionally, unless the Court grants the requested preliminary injunctive relief and issues a temporary restraining order, Plaintiffs will suffer irreparable harm. As is set forth in the Complaint and the Affirmations and Affidavits attached hereto, Defendants requested that Plaintiffs book their shipping through the Association, which Plaintiffs did, based on the $55 fee

1

per container agreement. Defendants are now threatening to cancel Plaintiffs' membership if they do not pay the additional exorbitant fees. If Plaintiffs' membership in the Association is cancelled, Plaintiffs will be unable to ship any of their containers and will therefore lose clients and large sums of money which will essentially damage Plaintiffs' businesses with income and reputation. Therefore, the cancelling of the membership constitutes irreparable harm warranting the granting of preliminary injunctive relief.

## THE FACTS

The facts of this matter have been fully set forth in the Complaint, Affirmations and Affidavits of Eliezer Drew, Shmuel Newman, and Shalom Coleman and will not be repeated at length herein.

## ARGUMENT

## POINT 1

### PLAINTIFFS HAVE MET THE STANDARD FOR THE ISSUANCE OF A PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER

**A. The Standard**

The Second Circuit's standard for the grant of a preliminary injunction or temporary restraining order under Fed. R. Civ.P. Rule 65 is well known. As the court stated in *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33 (2d Cir. 1995):

> "A party seeking injunctive relief ordinarily must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."

*See also: North Atlantic Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999); *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77-78 (2d Cir. 1994); *Reuters Ltd. v. United Press International, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990). "The standards for granting a TRO are

2

the same as those governing preliminary injunctions." *Lawrence v. Zee*, No. 16-CV-1515, 2016 WL 1690669, at *1 (E.D.N.Y. Apr. 26, 2016).

Where, however, a party seeks not simply to maintain the status quo but seeks a mandatory injunction which alters the status quo, the movant must show a "clear" or "substantial" likelihood of success on the merits.[1] As the court stated in *Tom Doherty Associates, Inc.*, supra, at p. 34:

> "The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. *See Abdul Waliv. Coughlin*, 754F.2d 1015,1025 (2d Cir. 1985). A mandatory injunction, in contrast, is said to alter the status quo by commanding some positive act, *See id*. As noted above, this distinction is important because we have held that a mandatory injunction should issue "only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Id. (internal quotations and citations omitted): see also *SEC v. Unifund SAL*, 910 F.2d 1028, 1039 (2d. Cir. 1990) (injunction going beyond preservation of status quo requires "a more substantial showing of likelihood of success"); J*acobson & Co. v. Armstrong Cork Co.,* 548, F.2d 438,441 (2d Cir. 1977).

The "clear" or "substantial" requirement thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success. *See Unifund SAL*, 910 F.2d at 1039.

Courts within this Circuit have consistently emphasized that "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir. 1990) (internal quotes omitted). As is hereafter set forth, Plaintiffs meets the standard for an award of the requested preliminary injunctive relief and a temporary restraining order.

---

[1] Whether compelling Defendants to comply with its clear contractual obligation to continue shipping as per the original agreement fee is "maintaining the status quo" or constitutes a "change in the status quo" is, under the circumstances of this case, a distinction without a difference. Defendants' contractual obligation to reserve slots and ship Plaintiffs' containers are clear and unequivocal, and, therefore, Plaintiffs have met either standard in connection with the issuance of a preliminary injunction.

**B.      Plaintiffs Have An Overwhelming Likelihood of Success on the Merits.**

As noted above, the cases generally require merely "a likelihood of success on the merits" for the grant of a preliminary injunction and temporary restraining order. Where a mandatory injunction is sought, a plaintiff must make a showing of a substantial likelihood of success. In this case, Plaintiffs' likelihood of success at trial is overwhelming.

> i.      The Defendants agreed that by Plaintiffs joining the Association, Plaintiffs would be able to ship its containers for an additional $55 fee per container.

**Plaintiff YSN**

On July 15, 2020 YSN executed an application to join the Association as a member. (Newman Aff. at ¶ 8.) The membership enrollment agreement sets forth that there is only a $55 per container charge and specifically stated "no further amounts will be charged to the Member." (Newman Aff. at ¶ 7). On July 20, 2020, Oberlander emailed Maersk that YSN was a member of the Association and should be added to the Maersk system. (Newman Aff. at ¶ 9). At no time prior the threat to cancel their membership was YSN presented with any documents or agreements that stated or implied the Association could add additional fees at its own discretion. (Newman Aff. at ¶ 10).

**Plaintiff Ashtead**

On July 31, 2020 Ashtead sent via email a complete and signed application to Defendants to join the Association as a member. (Coleman Aff. at ¶ 13). On or about July 28 or 29, 2020 Oberlander verbally confirmed to Ashtead that there would be a $55 per container fee and no other fees would apply for using the Association's service. (Coleman Aff. at ¶ 7, 9). On July 31, 2020, Oberlander sent an email to Maersk regarding Ashtead to add Ashtead as an additional party to the Association's contract. (Coleman Aff. at ¶ 14). At no time did any of the Defendants present

4

Ashtead with any document or agreement that stated or implies that the Association could add additional fees at its own discretion. (Coleman Aff. at ¶ 15).

> ii. Now, Defendants are invoicing Plaintiffs exorbitant fees above the agreed fee of $55. Defendants are requiring that Plaintiffs pay additional fees per container contrary to the agreement.

**Plaintiff YSN**

On October 28, 2020, a phone call between YSN and Oberlander took place during which Oberlander threatened to throw YSN out of the Association unless YSN allowed Oberlander to handle the customs clearance. (Newman Aff. at ¶ 19). Oberlander also said she wanted to charge an extra $100 to $150 per container for a management fee. YSN told Oberlander that this is a breach of the current agreement and is rejected. (Id.) On November 9, 2020, Oberlander emailed the Members that they will need to pay an extra $1000 per container in order to get a "sea priority feature via Maersk" to secure bookings. (Newman Aff. at ¶ 20). After the November 9, 2020 email, YSN contacted a high-ranking representative at Maersk and they confirmed that Maersk has not changed its agreement with the association including no changes in fees. (Newman Aff. at ¶ 21). On November 16, 2020, Oberlander emailed the members of the Association they will need to pay an extra management fee of $1200 if they want to continue shipping with Maersk. (Newman Aff. at ¶ 22). In this email Oberlander requested that members should sign an amendment to the application form agreeing to the new fees. (Id.). On December 3, 2020, Defendants sent YSN two invoices aggregating to $18,600 in "management fees" for shipments YSN has booked on Maersk but not yet shipped. (Newman Aff. at ¶ 25). On December 7, 2020, Defendants sent YSN another invoice for $48,000 in "management fees" for shipments YSN has booked on Maersk but not yet shipped. (Newman Aff. at ¶ 26).

**Plaintiff Ashtead**

On November 9, 2020, Oberlander emailed the Members of the Association that they will need to pay an extra $1000 per container in order to get a "sea priority feature via Maersk" to secure bookings. (Coleman Aff. at ¶ 20). In response to the November 9, 2020, Ashtead requested to utilize the sea priority feature and emailed Maersk asking how to create new booking with this priority feature. (Coleman Aff. at ¶ 21, 22). Maersk responded that they do not know of this surcharge. (Coleman Aff. at ¶ 23). After Ashtead learning that the additional fees were not from Maersk, as previously indicated by Overlander, Ashtead objected to the additional fees. (Coleman Aff. at ¶ 25). On November 16, 2020, Oberlander emailed the members of the Association that they will need to pay an extra management fee of $1200 per FEU starting December 1, 2020 if they want to continue shipping with Maersk. (Coleman Aff. at ¶ 28). In this email Oberlander requested that the Members sign an amendment to the application form to change the agreed upon fees. (Id.). On November 30, 2020, Defendants sent Ashtead an Invoice in the amount of $15,000 for the fraudulent "sea priority feature via Maersk." (Coleman Aff. at ¶ 27).

Plaintiffs contracted with Defendants to use Defendants' services to ship merchandise and agreed to pay Defendants a $55 fee per container, but Defendants refused to honor the original fee agreement. (Newman Aff. at ¶¶ 22, 25, 26; Coleman Aff. at ¶¶ 27). Thus, Plaintiffs have established an overwhelming likelihood of success on the merits of its breach of contract claim against Defendants regarding the fees to ship Plaintiffs' containers.

C.   **Plaintiffs Will Suffer Irreparable Harm if   Injunctive Relief is Not Granted.**

"To satisfy the irreparable harm requirement, Plaintiffs must demonstrate that absent a preliminary injunction they will suffer "an injury that is neither remote nor speculative, but actual and imminent," and one that cannot be remedied "if a court waits until the end of trial to resolve the harm." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007).

Plaintiffs also meet the other requirement for a preliminary injunction and a temporary restraining order- irreparable harm absent the grant of the injunction. Plaintiffs meet this prong of the test for several reasons.

### i. Absent a preliminary injunction and temporary restraining order, Plaintiffs will suffer an actual and imminent injury.

Plaintiffs joined the Association based on the enrollment agreement stating that the Association would only charge a $55 fee per container built into the fee of the shipping company. (Newman Aff. at ¶ 4-8; Coleman Aff. at ¶ 9, 13). In August 2020 Oberlander asked YSN to increase the amount of container bookings through the association. (Newman Aff. at ¶ 12). In reliance on the stated price, YSN moved over the bulk of their container bookings through the Association. (Newman Aff. at ¶ 13). During September 2020, numerous orders were cancelled and Oberlander responded that the Association opened the portal to too many users as the shipping industry was dealing with shortages. (Newman Aff. at ¶ 14). Due to the shipping shortages, even if YSN and Ashtead were to try and secure space on other shipping lines, they would likely not be able to get space at all and any limited available space would be at drastically inflated prices. (Newman Aff. at ¶ 16; Coleman Aff. at ¶ 19).

In the end of Oberlander threatened to throw YSN out of the Association unless YSN allowed Oberlander to handle the customs clearance and also charge and additional $100 to $150 per container but YSN rejected. (Newman Aff. at ¶ 19). In the beginning of November 2020 Oberlander emailed that member would need to pay an extra $1000 extra for "sea priority feature via Maersk" to secure booking (Newman Aff. at ¶ 20; Coleman Aff. at ¶ 20).  YSN then spoke to Maersk and was told that the additional fee was not from them. (Newman Aff. at ¶ 21). In mid-November 2020, Oberlander told members of the Association that they will need to pay an extra management fee of $1200 per FEU starting December 1, 2020 if they want to continue shipping

7

with Maersk and then provided members with an amendment to the application form to change the agreed upon fees to be signed. (Newman Aff. at ¶ 22; Coleman Aff. at ¶ 28). Again, this fee did not come from the shipping company. (Newman Aff. at ¶ 23; Coleman Aff. at ¶ 25).

Since Defendants enticed YSN to ship with them and to increase their shipping with them, YSN does not have the ability to go back now and get bookings with their prior contracts since YSN effectively switched almost all their shipping to the Association. (Newman Aff. at ¶ 31).

As a result of the tightening in the shipping industry, since Defendants enticed Ashtead to ship with them and to increase their shipping with them, Ashtead does not have the ability to go back now and get bookings with their prior contracts since Ashtead effectively switched almost all their shipping to the Association. (Coleman Aff. at ¶ 34).

Therefore, if YSN and Ashtead are not able to continue to ship under the Association, as an importer, their business will effectively be shut down, causing irreparable damage to their business, to customer relations and it will create losses that will be nearly impossible to calculate, since there will be a lot of cancelled customer purchase orders due to lack of product, and lost good will with many customers, which will have negative financial ramifications for many years to come. (Newman Aff. at ¶ 32; Coleman Aff. at ¶ 35).).

      ii.    **Defendant Association has limited assets and will be unable to satisfy any ultimate damages award**

The "irreparable harm" requirement for preliminary injunctive relief and a temporary restraining order is met where, as here, the movant has demonstrated that, absent such relief, any potential monetary judgment may well be uncollectible. Thus in *Alvenus Shipping v. Delta Petroleum (U.S.A.) Ltd.*, 876 F. Supp. 482, 487 (S.D.N.Y. 1994) the court stated:

> "As a general rule, irreparable harm is not present when the plaintiff has a claim for money damages .... However, an exception to the general rule exists when it is shown that a money judgment will go unsatisfied absent equitable relief."

8

*See also, Seide v. Crest Color, Inc.*, 835 F. Supp. 732, 735 (S.D.N.Y. 1993); ("Even if a loss is fully compensable by an award of money damages, however, extraordinary circumstances, such as a risk that the defendant will become insolvent before a judgement can be collected, may give rise to the irreparable harm necessary for a preliminary injunction."); *Brenntag International Chemicals, Inc. v. Bank of India*, 175 F.3d 245,250 (2d Cir. 1999)(irreparable harm is presented in "monetary injury situations involving obligations owed by insolvents."); *Department of Urban Development v. K Capolino Construction Corp.*, 2001 U.S. Dist. LEXIS 5825. *10 (S.D.N.Y. May 7, 2001) ("A monetary injury involving an obligation owed by an insolvent party constitutes irreparable injury."); *Alpha Capital Aktiengesellschaft v. Group Management Corp.*, 2002 WL 3I681798 at *11 (S.D.N.Y. Nov. 25, 2002) ("[T]he Second Circuit has made it abundantly clear that irreparable harm is presented in 'monetary situations involving obligations owed by insolvents.'(citing *Brenntag International Chemicals*)"; *Republic of Philippines v. Marcos*, 806 F.2d 344, 356 (2d Cir. 1986)("preliminary injunctions are proper to prevent a defendant from making a judgment uncollectible.")).

Plaintiffs will suffer irreparable harm if the requested injunctive relief is not awarded because the Association is a non-stock corporation and will unlikely be able to pay damages for any ultimate award at the end of this case. The virtually certain inability of a defendant to respond in damages at the end of a case constitutes irreparable harm warranting injunctive relief.

The Association is a non-stock (functionally non-profit) corporation the Association. (Drew Aff. at ¶¶ 21). As a non-stock corporation, the Association would have limited assets to repay any judgment in favor of the Plaintiffs. (Id.).

9

It is apparent that Plaintiffs will unlikely be able to recover on any damages award. Rather the only manner by which Plaintiffs can possibly recover at least some of its damages for the Associations breach of its obligation is by granting the requested injunctive relief.

## POINT 2

### PLAINTIFFS SHOULD NOT BE REQUIRED TO POST A BOND

Rule 65 of the Federal Rules of Civil Procedures states as follows in connection with the issuance of a preliminary injunction:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Although the Ru1e is couched in mandatory language, the law is clear, however, that the Court has discretion with respect to requiring or dispensing with the bond. As the court stated in *La Plaza Defense League v. Kemp*, 742 F. Supp. 792, 807, note 13 (S.D.N.Y. 1990):

> While Rule 65(c) appears to be mandatory, courts may decline to require the posting of a security bond.

Indeed, it has been held that the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant.

*See also, Doctor's Associates v. Stuart*, 85 F.3d 975,985 (2d Cir. 1996); *Kamine/Besicorp. Allegany L.P. v. Rochester Gas & Electric Corp.*, 908 F. Supp. 1180, 1193 (W.D.N.Y. 1995) (the court dispensed with a bond when granting a temporary restraining order noting that it did not appear that the defendant would suffer any long term harm if it turned out that the restraining order was wrongly granted); *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) cert. denied, 94 S. Ct. 2644, 417 U.S. 932, 41 L. Ed. 2d 236 (1974) ("[T]he district court may dispense with security when there has been no proof of likelihood of harm to the party enjoined.");

*Fleet National Bank v. Trans World Airlines*, 767 F. Supp. 510, 519 (S.D.N.Y. 1991)(bond dispensed with when court believed movant acted in good faith and could not be liable to defendant).

Under the facts and circumstances in this case, there is no reasonable possibility that the Association will suffer any monetary damages as a result of being compelled to comply with its contractual obligations. There is no likely possibility that the Association will suffer any harm if the injunction is granted and allows Plaintiffs to keep their membership. The Court, therefore, should dispense with the requirement of the bond or, at most, require only a nominal bond.

## CONCLUSION

For the foregoing reasons, the Court should award the relief requested in Plaintiffs' Order to Show Cause.

Dated: December 8, 2020
Valley Stream, New York

Respectfully,

GRUSHKO & MITTMAN, P.C.

By: _____
Eliezer Drew, Esq. (ED0625)
515 Rockaway Avenue
Valley Stream, New York 11581
(212) 697-9500
eli@grushkomittman.com
*Attorneys for Plaintiffs*